Julian D. Jensen (USB No.1679)
Bruce L. Dibb (USB No. 0879)
JENSEN, DUFFIN & DIBB, LLP
Attorneys for Plaintiffs
311 South State Street, Suite 380
Salt Lake City, Utah 84111
Telephone: (801) 531-6600
Facsimile:  (801) 521-3731
Email:       brudi@jdcdj.com

IN THE UNITED STATED DISTRICT COURT, DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| TOM TIBBS, PEGGY TIBBS and HOME ADVANTAGE, LC,  a Utah limited liability company,<br><br>          Plaintiffs,<br><br>vs.<br><br>JASON K. VAUGHN, MELANIE F. VAUGHN, FREESTYLE HOLDINGS, LLC, a Utah limited liability company, MEDLEY ENTERPRISES, LLC, a Utah limited liability company, RICK KOERBER, THE FRANKLINSQUIRES COMPANY, LLC, a Utah limited liability company, FOUNDERS CAPITAL, a Utah limited liability company, FOUNDERS CAPITAL INVESTMENTS, LLC, a Utah limited liability company, FRANKLIN SQUIRES INVESTMENTS, LLC, ANNUIT COEPTIS, LLC, a Utah limited liability company, GABRIEL S. JOSEPH, FINANCIAL INTELLIGENCE, LLC, a Utah limited liability company, MICHAEL J. BALLARD, FIVE PILLARS INVESTMENTS, LLC, a Utah limited liability company, STEPHEN FREESTONE, TSS INVESTMENTS, LLC, a Utah limited liability company, SONNY JENSEN, BUTTERFLY PROPERTIES, LLC, a Utah limited liability company, STEVENSBALES, LLC, a Utah limited liability company, MARK ALLEN CRANER, REDLINE INVESTMENTS, LLC, a Utah limited liability company, E. PETER HANSEN, John Does I through IX and  Jane Does I through IX,<br><br>          Defendants. | **COMPLAINT**<br><br><br><br>Civil No. 2:08-cv-787<br><br><br>Judge: Tena Campbell |

COMPLAINT

COMES NOW the above-named Plaintiffs, Tom Tibbs, Peggy Tibbs and Home

Advantage, LC, by and through their attorneys and state as follows:

JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this case pursuant to

15 U.S.C.A. Section 77v (a) and 78aa, because Plaintiffs allege one or more violations of

Section 10(b) of the 1934 Securities Exchange Act (the "Exchange Act"), 15 U.S.C.A.

Section 78j(b); and/or Securities Exchange Commission Rule 10b-5, 17 C.F.R. Section

240.10b-5, promulgated thereunder; as well as violations of Section 12(a)(1) and (2) of

the 1933 Securities Act (the "Securities Act"), 15 U.S.C.A. Section 77l (a)(1) and (2),

and the violations of such acts involved one or more means or modalities of interstate

commerce.

2.      The Court has personal jurisdiction over all Defendants because, as to each

allegation herein, the Defendant is a resident or routinely conducts business in Utah,

and/or committed the acts and/or omissions complained of in Utah, and the Plaintiffs are

all citizens of Utah.

3.      Violations of the Utah Uniform Securities Act (the "Utah Act"), Section

61-1-1 *et seq.*, and other state law and common law claims are included in this Complaint

based upon principles of pendent jurisdiction.

4.      Venue in this District is proper pursuant to Section 22(a) of the Securities

Act (15 U.S.C. Section 7 (v)(a)), and Section 27 of the Exchange Act (15 U.S.C. Section

78aa) because multiple defendants transacted their affairs, have agents, are found, and reside within the District of Utah, and acts or transactions constituting federal securities law violations occurred within the District of Utah.

PARTIES

5.     Tom Tibbs and Peggy Tibbs (collectively referred to as the "Tibbs"), are investors in the securities of the Defendants and are residents of St. George, Utah. At the time that they initiated their investment activities with the Defendants, they were residents of Monticello, Utah.

6.     Home Advantage, LC is a Utah limited liability company, formed by the Tibbs with its principal place of business in the State of Utah. The investments of the Tibbs were made through this company.

7.     Jason K. Vaughn and Melanie F. Vaughn (collectively referred to herein as the "Vaughns"), are residents of Utah County, State of Utah. Jason K. Vaughn was the principal contact for the Plaintiffs for the investments described in this Complaint.

8.     Freestyle Holdings, LLC (Freestyle) was registered as a Utah limited liability company on January 12, 2005, and the entity status is currently "delinquent." Jason K. Vaughn and his wife, Melanie F. Vaughn, are the sole members of Freestyle. The address of the office of Freestyle is in Utah County, State of Utah.

9.     Medley Enterprises, LLC, is a Utah limited liability company. In the articles of organization of Freestyle, Medley is designated as the initial Manager of Freestyle and reflects as its company address 85 East Bay Blvd., Provo, Utah, 84606.

10.     Rick Koerber, also known as Claud Roderick Koerber, is a founder of FranklinSquires, LLC and Founders Capital, which are believed to be the principal recipients of the funds invested by the Plaintiffs. On information and belief, Koerber is a resident of the State of Utah; conducts business through multiple companies organized and having their principal places of business in the State of Utah; and he is the principal seminar presenter, "rain maker" and spokesman for FranklinSquires and Founders Capital.

11.     The Defendants, FranklinSquires, LLC and Founders Capital are Utah limited liability companies, having their principal places of business in Utah County, State of Utah.

12.     The Defendants, FranklinSquires and Founders Capital are the principal entities which received the investment funds of the Plaintiffs, as funneled through Freestyle.

13.     FranklinSquires is a member managed limited liability company, as described in its articles of organization.

14.     The defendants, Annuit Coeptis, LLC, Financial Intelligence, LLC, Five Pillars Investments, LLC, TSS Investments, LLC, Butterfly Properties, LLC ("Butterfly"), StevensBales, LLC and Redline Investments, LLC, are each Utah limited liability companies; are each members having management authority of FranklinSquires; and each have their principal place of business in Utah County, State of Utah. The defendant, Franklin Squires Investments, LLC ("FS Investments"), is either a foreign or

an unfilled limited liability company which is named as one of the managing members of FranklinSquires. FS Investments is engaged in business in the State of Utah.

15.     Each of the entities referenced in the preceding paragraph act at the direction of the principals of such entities. As such, the principals of these entities are the actual decision makers and the principal participants in the scheme and artifice to defraud as perpetrated by FranklinSquires and its seminars, resulting in the sale of unregistered securities and the other securities violations described in this Complaint.

16.     The principal of Annuit Coeptis, LLC is Gabriel S. Joseph, a resident of Utah County, State of Utah.

17.     The principal of Financial Intelligence, LLC is Michael J. Ballard, a resident of Utah County, State of Utah.

18.     The principal of Five Pillars Investments, LLC is Steven Freestone, a resident of Utah County, State of Utah.

19.     The principal of TSS Investments, LLC is Sonny Jensen, a resident of Utah County, State of Utah.

20.     The principal of StevensBales, LLC is Mark Allen Craner, a resident of Utah County, State of Utah.

21.     The principal of Redline Investments, LLC is E. Peter Hansen, a resident of Utah County, State of Utah.

22.     Butterfly Properties, LLC, one of the members of FranklinSquires, is owned by the defendants, Jason K. Vaughn and Melanie F. Vaughn as members, and is managed by Jason K. Vaughn as its manager.

23.     John Does I through IX and Jane Does I through IX are other individuals or

entities, which may be unknown to the Plaintiffs at this time but which are principal

participants in the overall scheme and artifice to defraud as described in this Complaint.


## FACTUAL BACKGROUND

24.     From July 2005 to June 2007, Freestyle and the Vaughns solicited a total of

at least $1,451,000 from at least eight investors from Utah, Oregon, Idaho, and Louisiana.

25.     The Vaughns told prospective investors that funds would be advanced to

Founders Capital or FranklinSquires, and invested in real estate related transactions such

as "hard money loans" and "bridge-loans." The Plaintiffs understood hard money loans to

mean funds loaned to purchase distressed real property at purchase prices substantially

below the market value of such properties.

26.     Such loans were to be secured for the benefit of the investor by a trust deed

on the subject properties.

27.     Sometimes the Vaughns told investors that the funds of the investors would

be placed in real estate related transactions such as "hard money loans" and "bridge

loans," without any mention of the entity that was to receive the funds.

28.     The Vaughns offered the Plaintiffs promissory notes with an interest rate of

3% per month for a term of eight months.

29.     The Vaughns told the Plaintiffs they could withdraw their money at any

time with 30 days notice, making the notes callable on demand. The Vaughns also said

the investment would be secured by real estate.

30.   The promissory notes the Vaughns issued state that the note is secured by "the relative portion of the total equity of real property estate holdings of [Freestyle]."

31.   Freestyle and the Vaughns made interest payments to investors until July 2007.

32.   Tom Tibbs and Peggy Tibbs attended a FranklinSquires three day presentation, principally under the direction of Koerber, who was the featured speaker on each of the three days. This seminar took place at St. George in Washington County, Utah, on January 6th, 7th and 8th, 2005 (the "St. George Seminar"). A model investment opportunity was presented at the meeting, but no specific person or company was mentioned, other than a reference to an entity named Eastbay Properties.

33.   A few weeks later, in January or February of 2005, Jason K. Vaughn telephoned Tom Tibbs and Peggy Tibbs and introduced himself to them as a trainer or "instructor" in the methodology as presented by Koerber for the investments described by Koerber, FranklinSquires and their affiliates.

34.   In September 2005, Tom Tibbs and Peggy Tibbs (in San Juan County, Utah) spoke to FranklinSquires employees (in Utah County, Utah) by telephone, regarding different holding companies within FranklinSquires that were accepting investments. The Vaughns' company, Freestyle, was mentioned as a possible recipient of an investment.

35.   In telephone conversations with representatives of FranklinSquires, the Plaintiffs were advised that if they wanted to participate in the lucrative lending

7

component of the business plan of FranklinSquires, they would be required to take certain classes or coursework offered by FranklinSquires.

36.    To satisfy this requirement, Tom Tibbs enrolled in, and completed, certain classes offered by FranklinSquires. For Tom Tibbs, these classes were conducted over the internet.

37.    Tom Tibbs and Peggy Tibbs subsequently spoke to Jason K. Vaughn in a telephone conversation, and Jason K. Vaughn agreed to accept their investment funds.

38.    In the later part of November 2005, Tom Tibbs had a telephone conversation with Robert Switzenburg, a representative of FranklinSquires at the offices of FranklinSquires. Robert Switzenburg affirmatively represented to the Plaintiffs, and confirmed that:

   a.  In order to participate in the investment program yielding returns of 3% to 5% per month, an investor must be a "student" in the coursework offered by FranklinSquires;

   b.  Because the investments consisted of private money lending, the transactions were exempt from the application of any securities laws; and

   c.  The FranklinSquires representatives ( or "instructors") who accepted loaned funds required no securities license.

39.    The Vaughns affirmatively told the Plaintiffs the following regarding the investment opportunity:

      a.   Their funds would be used to make hard money loans to buyers involved with the FranklinSquires programs until the buyers of the distressed properties had secured conventional loans;

      b.   The Plaintiffs would receive 3% monthly interest;

      c.   Principal would be repaid with 30 days advance written notice, or a term of eight months, whichever was sooner;

      d.   The promissory note could be renewed for additional eight month periods;

      e.   The promissory note would be secured by the "relative portion of the total equity of real property estate holdings of [Freestyle];"

      f.   The investments made with the loan funds would themselves be secured by adequate security interests in real property; and

      g.   The investments were exempt from the application of the securities laws, no securities were involved in the lending transaction, and no securities licensing was required.

40.    The Plaintiffs were never told that their invested funds would be used for anything other than secured hard money loans or bridge loans according to the extensive training received from Jason K. Vaughn and Koerber.

41.     The Plaintiffs made their initial investment of $65,000 with Freestyle on October 17, 2005 by the check attached hereto as Exhibit "A," which check is incorporated herein by this reference.

42.     In return, Tom Tibbs and Peggy Tibbs received a promissory note from Freestyle, which bears Jason Vaughn's signature as the "Managing Member" of Freestyle. A copy of the October 17, 2005 promissory note is attached hereto as Exhibit "B" and is incorporated into this Complaint by this reference.

43.     The Plaintiffs made several subsequent investments which were documented by the Vaughns with a "Change of Principal &/or Interest Amount Related to a Promissory Note." The last change of principal document, reflecting the Plaintiffs' final investment on October 7, 2007, is attached hereto as Exhibit "C" and is incorporated into this Complaint by this reference.

44.     The Plaintiffs invested a total of $606,463.49 with the Defendants, in ten separate investments in the following amounts and on the following dates:

| Date | Amount |
|------|--------|
| 10/17/2005 | $65,000 |
| 03/07/2006 | 15,000 |
| 06/07/2006 | 30,000 |
| 10/30/2006 | 247,500 |
| 01/08/2007 | 40,500 |
| 01/23/2007 | 80,000 |
| 06/13/2007 | 77,000 |
| 08/07/2007 | 16,650 |
| 09/07/2007 | 17,149.50 |
| 10/07/2007 | 17,663.99 |

The initial seven investments consisted of actual cash funds paid by the Plaintiffs in the aggregate amount of $555,000. The final three investments of principal consisted of paper transactions applying the August, September and October 2007 monthly installments of interest.

45.     The Plaintiffs generally received their interest payments through and including July 2007, and were credited with the August through October 2007 payments as additional principal.

46.     When interest payments stopped, the Vaughns told the Plaintiffs that it was because Founders Capital had not paid Freestyle interest owed, and because Founders Capital put a hold on all capital calls.

47.     In a letter dated August 20, 2007, addressed to Freestyle and the Vaughns, with carbon copies to Claud Roderick Koerber (Koerber), founder of Founders Capital and FranklinSquires, and Clavell Anderson, the managing member of Mountain Peaks Investments, LLC (according to FranklinSquires' website), the Plaintiffs requested the return of their principal and interest owed. A copy of this written request is attached hereto as Exhibit "D" and is incorporated into this Complaint by this reference.

48.     Since August 2007, the Plaintiffs have received nothing from Freestyle or from the Vaughns, other than the August, September and October 2007 credits applied to principal as reflected in Exhibit "D"

49.     On or about December 12, 2007, representatives of the Utah Division of Securities (the "Division"), sent a letter to the Plaintiffs indicating that the Vaughns and Freestyle were under investigation by the Division. At that time, the Plaintiffs were first

advised of facts about the Defendants that alerted them to their fraud claims and claims for securities violations.

50.     The Plaintiffs responded to the inquiry of the Division by letter dated December 18, 2007.

51.     Bank records in the possession of the Utah Securities Division reveal that of the $606,463.49 invested by the Plaintiffs, the Vaughns used $47,000 to pay a personal insurance premium and used other loan proceeds to make interest payments to several investors, including to the Plaintiffs themselves. The remainder of the Plaintiffs' investment went to Founders Capital, or was withdrawn by the Vaughns, leaving its ultimate disposition unknown.

## CAUSES OF ACTION

### COUNT I
(Violation of Section 10(b) of the Securities Act and of Rule10b-5)

52.     Plaintiff incorporates by this reference the preceding paragraphs of the Complaint.

53.     This Count is brought under Section 27 of the Securities Exchange Act of 1934, 15 U.S.C.A. Section 78aa, to enforce rights arising under Section 10(b) of the Exchange Act, 15 U.S.C. Section 78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. Section 240.10b-5.

54.     The promissory notes offered and sold by the Defendants are securities
under Section 2(b)(1) of the Securities Act and under Section 3(a)(10) of the Exchange
Act.

55.     In connection with the offer and sale of securities to investors, Defendants,
directly or indirectly, made false statements, and/or engaged in a scheme or artifice to
defraud including, but not limited to, those set forth above in this Complaint, and the
following:

a.     Invested funds would be used exclusively in real estate transactions, mostly
bridge loans, when in fact, the Defendants knew that the Vaughns, Founders
Capital or FranklinSquires would use, and did use, the funds for purposes other
than as represented to the Plaintiffs;

b.     Instead of making required disclosures of specific risk factors of the
investments, the St. George Seminar program materials stated that participants in
the seminar would learn:

i.     "how to manage financial risk to near zero while actively investing for
huge returns;"

ii.     "why the highest returns are the result of investing with SAFETY, not
risk" [capitalized emphasis in original]; and

iii.     " how to safely earn 2-5% per month on your cash;"

c.     The investments consisted of private money lending and were not subject to
any securities laws; and

    d.    The parties directly selling to the Plaintiffs knew but failed to disclose the participation, or fees of, other defendants receiving Plaintiffs' funds.

56.    In connection with the offer and sale of securities to investors, Defendants, directly or indirectly, failed to disclose material information, including, but not limited to, the following, which was necessary in order to make the representations made not misleading:

a.  Jason K. Vaughn, an owner and principal in Freestyle, Medley and Butterfly (and, therefore, in FranklinSquires), had civil judgments entered against him in 2004 and 2006 which totaled approximately $12,000.

b.  Melanie F. Vaughn, also an owner or principal in Freestyle, Medley and Butterfly, had a civil judgment of $12,180.61 entered against her in 2004;

c.  Jason K. Vaughn had an unpaid civil judgment of $5,704.51 against him in 2007;

d.  On November 22, 2000, Koerber, under the name C. Rick Koerber, entered into a Stipulated Order Adopting Settlement in Case #00-04 with the Wyoming Secretary of State's Office for violations of the Wyoming Uniform Securities Act;

e.  The complex web of financial relationships between the Defendants, and that funds would almost immediately pass beyond the control or review of the Defendants initially soliciting the investment funds;

f.  The Vaughns would use some of investors' funds to pay personal expenses and to pay interest payments to investors, including to the Plaintiffs themselves;

g.  The Vaughns, by and through their wholly owned company, Butterfly, were members of one of the entities receiving investment funds, and had management

and investment authority in the member managed investment vehicle, resulting in inherent and undisclosed conflicts of interest;

h. That the promissory notes issued as part of the Defendants' investment program were unregistered securities;

i. That the promissory notes issued as part of the Defendants' investment program were being issued/sold by the Defendants as unlicensed sales agents; and

j. Some or all of the information typically provided in an offering circular or prospectus regarding Freestyle, FranklinSquires and Founders Capital, such as:

    i. Risk factors for investors;

    ii. Discussion of pertinent suitability factors;

    iii. Any conflicts of interest the issuer, the principals, or the agent may have with regard to investments;

    iv. Identities of all of the principals of FranklinSquires and Founders Capital, along with a description of their experience;

    v. Financial statements for Freestyle, FranklinSquires and Founders Capital;

    vi. The market for the products or services of Freestyle, FranklinSquires and Founders Capital;

    vii. The nature of the competition for the products or services of these entities;

    viii. Current capitalization of Freestyle, FranklinSquires and Founders Capital;

ix.     The track record of Freestyle, FranklinSquires and Founders Capital to investors, or of any other person or entity who was to receive invested funds;

x.      The proposed use of the investment proceeds;

xi.     Agent commissions or compensation for selling the investment;

xii.    Whether the investment is a registered security or exempt from registration;

xiii.   Whether the person selling the investment was licensed; and

xiv.    Whether any of the principals of entities affiliated with or under common control with the issuer of the securities had filed a bankruptcy proceeding.

57.    Defendants' representations and omissions in disclosure, were material because, had the Plaintiffs been fully informed of the truth of the representations and/or omissions, Plaintiffs would not have made the investments in the promissory note.

58.    As an example, among many, if the Defendants would have disclosed at the St. George Seminar in January 2005 that Koerber, their principal program presenter and "rain maker" at the seminar, was the subject of a Stipulated Order Adopting Settlement with the Wyoming Secretary of State regarding violations of the Wyoming Uniform Securities Act as recently as November 22, 2000, Plaintiffs would not have made the investments in the promissory note.

59.     Plaintiffs' investments in the promissory note were made at the urging of the Defendants and were made in the manner reasonably contemplated by the Defendants to induce Plaintiffs to invest in the scheme.

60.     Plaintiffs reasonably relied on Defendants' representations as being the truth and were at all times unaware of the falsity of Defendants' representations, and were unaware of the significance and materiality of the omissions regarding matters which should have been disclosed.

61.     Defendants offered and sold securities through the use of telephone, email, regular mail, and other means and instrumentalities of interstate commerce.

62.     Defendants, by engaging in the conduct set forth above, directly or indirectly, by the use of means or instruments of interstate commerce, or by the use of the mails, with scienter or reckless disregard for the truth of the representations made: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstance under they which they were made, not misleading; or (c) engaged in acts, practices or courses or business which operated, or would operate, as a fraud or deceit upon the Plaintiffs and other persons, in connection with the purchase or sale of securities.

63.     By reason of the foregoing, defendants, Jason K. Vaughn, Melanie F. Vaughn, Freestyle, Medley, Butterfly, Koerber, John Does I through IX and Jane Does I through IX have directly or indirectly violated Section 10(b) of the Exchange Act (15 U.S.C 78j(b)) and Rule 10b-5 (17 C.F. R. Section 240. 10b-5) and are liable for damages in an

amount to be proven at trial, but not less than $606,463.49, with interest from the date of investment by the Plaintiffs.

64. The remaining Defendants had the ability to control, and through their primary owners and managers, had the knowledge and/or culpably participated to a significant degree in violations of the securities laws and are, therefore, jointly and severally liable for the violations in accordance with Section 15 of the Securities Act and/or Section 20A of the Exchange Act (15 U.S.C.A. Section 77o and 15 U.S.C.A. Section 78t (a)). In addition, the above named Defendants are secondarily liable to the Plaintiffs through the theories of respondeat superior, common law agency and alter-ego principles.

COUNT II
(Violation of Section 12(a)(1) of the Securities Act)

65. Plaintiff incorporates by this reference the preceding paragraphs of the Complaint.

66. This Count is brought under Section 22(a)(1) of the Securities Act of 1933, as amended, 15 U.S.C. Section 77v (a)(1), to enforce a liability created by Section 12(a) of the Securities Act, 15 U.S.C. Section 77l (2) and 15 U.S.C. Section 77(o) respectively, arising out of the sale of unregistered securities.

67. Defendants directly offered and sold securities, or were material participants in such sales to the Plaintiffs in Utah, in the form of investments in the promissory notes as previously described using one or more means of interstate commerce.

68. These investments constitute unregistered securities.

69.     No registration statement for these securities was filed, or was in effect, in accordance with federal securities requirements, and the securities were sold in violation of Section 5(a)(c) of the Securities Act (15 U.S.C.A. Section 77e (a) and 77e(c)).

70.     Defendants, Jason K. Vaughn, Melanie F. Vaughn, Freestyle, Medley, Butterfly and Koerber have, by engaging in the conduct set forth above, directly or indirectly, through use of means or instrumentalities of transportation or communication in interstate commerce or the mails, sold a security in violation of Section 5, and are strictly liable pursuant to Section (1)2 of the Securities Act (15 U.S.C.A. Section 77i (a)(1)) in an amount to be proven at trial, but not less than $606,463.49, with interest from the date of investment by the Plaintiffs.

71.     The remaining Defendants had the ability to control, and through their primary owners and managers, had the knowledge and/or culpably participated to a significant degree in violations of the securities law and are therefore jointly and severally liable for the violations in accordance with Section 15 of the Securities Act and/or Section 20A of the Exchange Act (15 U.S.C.A. Section 77o and 15 U.S.C.A. Section 78t (a)). In addition, the above named Defendants are secondarily liable to the Plaintiffs through the theories of respondeat superior, common law agency and alter-ego principles.

72.     Plaintiffs are entitled, as a direct cause of action, to recover under this Count all of their investment losses as set out above in this Complaint under this cause of action against those directly engaged in the sale of securities or who were knowingly material participants. Plaintiffs assert each Defendant was either a seller or a material participant, and that each are therefore jointly and severally liable to Plaintiffs under this Count.

COUNT III
(Violation of Section 12(a)(2) of the Securities Act)

73.     Plaintiff incorporates by this reference the preceding paragraphs of the Complaint.

74.     This Count is brought under Section 22(a)(2) Securities Act of 1933 as amended, 15 U.S.C. Section 77v(a)(2) to enforce the liability created by Section 12(a) of the Securities Act of 15 U.S.C. 77l(2) and 15 U.S.C. Section 7l respectively arising out of fraud or material omissions in the sale of a security.

75.     Defendants directly offered and sold securities or were material participants in such sales to the Plaintiffs in Utah in the form of investments in the promissory note as previously described using one or more means of interstate commerce.

76.     These securities constitute unregistered securities.

77.     In the sale of such securities by Defendants to Plaintiffs, the Defendants made material misrepresentations or omitted to make statements of fact necessary for Plaintiffs to make an informed investment decision, as such statements are more particularly defined and set out above, including but not limited to paragraphs 38, 39, 40, 55, 56 and 58, describing particular misstatements, misrepresentations or material omissions in the sale of the subject promissory note securities.

78.     Each of such misrepresentations or omissions to state material facts constitutes a separate securities law violation under Section 12(2) as set out in this Count. Each Defendant, as previously described, directly made such statements or omissions to state

material facts as part of the sales of the securities to the Plaintiffs, or were material participants with the selling party in completing such sale, and/or by association in the selling with the related entities as previously set out in the factual statements.

79.     As a direct and proximate result of such misrepresentations or omissions, the Defendants, and each of them jointly and severely, are liable to the Plaintiffs for their loss of investments in the asserted amount of $606,463.49, or as otherwise proven at trial, together with interest as provided by law.

80.     In addition, the above named Defendants, and each of them, are secondarily liable to Plaintiff under the theories of respondeat superior, common law agency and alter-ego principals.

## COUNT IV
### (Private Right of Action under Utah Securities Act, Section 61-2-22)

81.     Plaintiff incorporates by this reference the preceding paragraphs of the Complaint.

82.     Jurisdiction for this Count is conferred upon this Court under the applicable principle of pendent jurisdiction and each claim under this Count arises out of the same nexus of operative facts as previously alleged.

83.     Utah law creates a private express right of action for certain securities law violations as set out in Section 61-1-22 of the Utah Act.

84.     The promissory notes offered and sold by the Defendants are securities under Section 61-1-13 of the Utah Act.

85. The securities were offered and sold in or from the State of Utah.

86. No registration statement for these securities was filed, or was in effect, in accordance with federal securities requirements; the securities offered and sold by the Defendants were not registered under the Utah Act; and Defendants did not file any claim of exemption relating to the investment opportunity.

87. Defendants have, by engaging in the conduct set forth above, directly or indirectly sold an unregistered security in violation of Section 61-1-7 as incorporated by Section 61-1-22(a)(1) of the Utah Act, and are liable to the Plaintiffs for actual damages in an amount to be proven at trial, plus interest, costs and reasonable attorneys fees.

88. Each of the named Defendants had the ability to control, and through their primary owners and managers, had the knowledge and/or culpably participated to a significant degree in violation of the securities law and are therefore jointly and severally liable for the violations in accordance with Section 61-1-22 of the Utah Act. In addition, the Defendants are secondarily liable through the theories of respondeat superior, common law agency and alter-ego principals.

89. Based on the above information, the Defendants violated Section 61-1-7 of the Utah Act and liability arises under Section 61-1-22 of the Utah Act.

90. In addition, as previously alleged and set out, the Defendants directly, or as material participants, engaged in the sale and distribution of unregistered securities to Plaintiffs through misrepresentations or omissions to state material facts constituting a violation of Section 61-1-1(2) of the Utah Act as incorporated in the right of direct cause of action provided under Section 61-1-22 of the Utah Act.

22

91.     As a direct and proximate result of such misrepresentations or material omissions, the Defendants are each liable under Section 61-1-22 to the Plaintiffs for their principal investment loss in the asserted amount of $606,463.49, or as otherwise proven at trial, together with interest.

92.     Under both claims for losses asserted in this Count, liability is further extended under Section 61-1-22 of the Utah Act, to each Defendant who directly or indirectly controls the seller liable under the Utah Act, and every partner, manager, officer or director of such seller.

93.     Further, under Section 61-1-22(2) of the Utah Act, each of the Defendants is liable to the Plaintiffs, and Plaintiffs are entitled to recover, separate from their actual losses as alleged herein, treble damages, court costs and all incurred attorney fees, upon a showing that such misrepresentations, omissions, or sales of unregistered securities were made intentionally or recklessly, as defined under the Utah Act. The Plaintiffs, therefore, ask for such relief, as set out in this paragraph.

94.     Pursuant to the provisions of Section 61-1-22 of the Utah Act, the Plaintiffs are further entitled to judgment for interest on all amounts awarded under this section at 12%.

95.     Plaintiffs are entitled to recover such damages under Section 61-1-22, as previously set out, as to each Defendant, jointly and severely.

COUNT V
(Common Law Fraud)

96.    Plaintiff incorporates by this reference the preceding paragraphs of the Complaint.

97.    Jurisdiction for this Count is conferred upon this Court under the applicable principle of pendent jurisdiction and because all claims under this Count arise out of the same nexus of operative facts.

98.    Defendants have, by engaging in the representations, material omissions and conduct set forth above, made numerous and repeated material representations to Plaintiffs concerning presently existing material facts, which were false, and the Defendants knew them to be false or knew that they were made recklessly, knowing that they had insufficient information upon which to base the representations, for the purpose of inducing the Plaintiffs to act upon such information.

99.    The Plaintiffs, acting reasonable and in ignorance of the falsity of the representations, did in fact rely upon the representations and were thereby induce to act to their injury and have been damaged thereby.

100.    As a direct and proximate result of such fraudulent statements, omissions or acts, the Defendants have suffered actual damages of, at least, $606,463.49, or as otherwise proven at trial.

101.    To the extent Plaintiffs prove intent or recklessness, they should be awarded punitive damages and attorney fees under this Count. Plaintiffs pray for punitive damages, or as the Court shall otherwise determine.

24

## COUNT VI
### (Default and Breach of Contract Under Promissory Note)

102.   Plaintiff incorporates by this reference the preceding paragraphs of the Complaint.

103.   Jurisdiction for this Count is conferred upon this Court under the applicable principle of pendent jurisdiction and because all claims arise out of the same nexus of operative facts.

104.   The promissory note is a demand note payable at any time upon 30 days written demand.

105.   On August 20, 2007, the Plaintiffs gave written demand to the defendants, Jason K. Vaughn, Freestyle and Koerber to pay the outstanding principal obligation with interest.

106.   No payment has been made to the Plaintiffs since the date of the demand for payment and Freestyle is in breach of its agreement and is therefore obligated to pay to the Plaintiffs a sum to be determined at trial of this matter, but not less than $606,463.49 plus interest at 3% per month from October 7, 2007, plus late fees as provided in the promissory note.

## COUNT VIII
### (Foreclosure of Security Interest in Collateral)

107.   Plaintiff incorporates by this reference the preceding paragraphs of the Complaint.

108.    Jurisdiction for this Count is conferred upon this Court under the applicable principle of pendent jurisdiction.

109.    The promissory note states that it is secured by the "relative portion of the total equity of real property estate holdings of [Freestyle]."

110.    The Plaintiffs are entitled to an order of this Court foreclosing such security interest and directing that the real property estate holdings of Freestyle be sold and the proceeds thereof applied to the payment of the judgment in this matter.

COUNT IX
(Civil Conspiracy)

111.    Plaintiffs incorporate by this reference the preceding paragraphs of the Complaint.

112.    The Defendants knowingly joined and agreed to the terms of the conspiracies described in this Complaint.

113.    The Defendants created FranklinSquires, and the scheme and artifice to defraud as represented by the investments in the promissory notes, with the fraudulent objective of enticing investment in the sale of the unregistered securities by offering an above-average market rate of return on investment.

114.    The Defendants are not registered securities broker-dealers or licensed agents, and unlawfully offered the sale of unregistered securities with the objective of promoting the fraudulent scheme for their own personal financial benefit.

115.    The Defendants aided each other in this fraudulent scheme by facilitating investments in various funds, by locating properties, brokering mortgage loans and locating buyers of the properties, all for their own personal financial benefit.

116.    Defendants' actions in promoting the investments were coordinated, illegal and fraudulent.

117.    Each of the misrepresentations and omissions described herein, and the transactions which led to them, were overt acts undertaken in furtherance of these conspiracies.

118.    Plaintiffs suffered injury and economic damage as a direct result of Defendants' actions in an amount to be determined at trial.

119.    Plaintiffs are entitled to punitive or exemplary damages and attorneys fees as determined by the Court, upon proof of this Count.

COUNT X
(Conversion)

120.    Plaintiff incorporates by this reference the preceding paragraphs of the Complaint.

121.    The Vaughns, Freestyle, Medley and Butterfly diverted funds from the loans to be made on behalf of the Plaintiffs.

122.    The diversions include, but are not limited to, the Vaughns, Freestyle, Medley and Butterfly diverting funds totaling not less than $47,000 to the Vaughns directly to purchase an insurance policy.

123.   Upon information and belief, the Vaughns, Freestyle, Medley and Butterfly also diverted funds to other individuals and entities for liabilities that were unrelated to the represented uses of the loan proceeds.

124.   Plaintiffs have demanded return of the diverted funds. To the extent that the Plaintiffs herein have not already done so, Plaintiffs hereby make demand for immediate repayment of the diverted funds.

125.   The Vaughns, Freestyle, Medley and Butterfly, have refused to return the diverted funds.

126.   By reason of the forgoing, the Vaughns, Freestyle, Medley and Butterfly with the intent to wrongfully appropriate and assume ownership of the diverted fund, have intentionally assumed and exercised the right of ownership over the diverted funds to the exclusion of the rights of the Plaintiffs.

127.   Such taking and continued exercise of the right of ownership over the diverted funds was and is wrongful, intentional and malicious.

128.   Plaintiffs hereby request that the Court declare that the Vaughns, Freestyle, Medley and Butterfly have converted the diverted funds and award Plaintiffs herein damages in an amount equal to the diverted funds.

129.   The actions constituting conversion by the Vaughns, Freestyle, Medley and Butterfly have been taken with an intent indicating malice, fraud, and/or wanton disregard for the rights of the Plaintiffs herein. Therefore, Plaintiffs are entitled to punitive damages.

COUNT XI
(Unjust Enrichment)

130.    Plaintiffs incorporate by this reference the preceding paragraphs of the Complaint.

131.    The Vaughns received, at a minimum, funds totaling $47,000, which sum properly belongs to the parties represented by Plaintiff herein.

132.    Acceptance and retention by the Vaughns of the above-described funds is inequitable insofar as it deprives the Plaintiffs herein of funds that rightfully belong to them.

133.    By reason of the facts alleged herein, to wit, the unjust enrichment of the Vaughns, the parties represented by Plaintiff herein have sustained damages of at least $47,000.

134.    Plaintiffs are entitled to recovery in the amount proven at trial, plus interest.


COUNT XII
(Accounting)

135.    Plaintiffs incorporate by this reference the preceding paragraphs of the Complaint.

136.    As specifically described herein, the Vaughns, Freestyle, Medley and Butterfly have received at least $47,000 from the Plaintiffs for their personal use.

137.    The Vaughns, Freestyle, Medley and Butterfly received the above-referenced funds, despite the fact that no legitimate business purpose exists for receipt of those funds.

Case 2:08-cv-00787-TC-PMW   Document 2   Filed 10/10/08   Page 30 of 40

138.    Accordingly, Plaintiffs are entitled to an accounting of the funds received by the Vaughns, Freestyle, Medley and Butterfly and the return of any money paid to the Vaughns, Freestyle, Medley and Butterfly where no funds were legitimately due.

<u>PRAYER</u>

Wherefore, Plaintiffs pray for judgment against the Defendants as follows:

A.    For all general damages associated with all causes of action asserted above in an amount to be proven at trial, but not less than $606,463.49, together with interest from the date of investment;

B.    For all compensatory damages associated with the causes of action asserted above in an amount to be proven at trial;

C.    For attorneys fees and costs as provided under Utah law;

D.    For treble damages as provided under the Utah Act;

E.    Alternatively, for punitive damages under the fraud, conspiracy and conversion claims, if treble damages are not awarded.

F.    Judgment on Plaintiffs' conversion claim in an amount to be proven at trial;

G.    Judgment on Plaintiffs' unjust enrichment/quantum meruit damages in an amount to be proven at trial;

H.    An accounting by the Vaughns, Freestyle, Medley and Butterfly;

I.    For late fees as provided under the promissory note;

J.    For interest on all amounts awarded at the legal or statutory rate;

K.     For an order foreclosing the security interest of the Plaintiffs in the real property assets of Freestyle and an order applying the proceeds of such sale to payment of the judgment; and

L.     For such other relief as deemed appropriate by the trier of fact.

<u>JURY DEMAND</u>

Plaintiffs demand a jury trial on all issues.

Dated this _10th_ day of October, 2008.

Bruce L Dibb
Jensen, Duffin & Dibb, LLP
Attorneys for Plaintiffs

Plaintiffs' Address:
223 N. Stone Mountain Dr.
St. George, Utah

complaintCLEANoct10'08.958.doc

<u>EXHIBIT "A"</u>

Check for Initial Investment

**ZIONS BANK**

ACCOUNT # 0563102092

This Statement:
October 31, 2005
PAGE 2 of 2

DEPOSIT TICKET

HOME ADVANTAGE LLC
445 S 100 W   435-587-3080
PO BOX 1225
MONTICELLO, UT 84535

CASH — 65719.43

SUB TOTAL — 65719.43

LESS CASH —

$ 65719.43

ZIONS BANK

Processed 10/11/05    $65719.43



001

ZIONS ADVANTAGE, LC 6945

ZIONS FIRST NATIONAL BANK

445 S 100 W   435-587-3080
PO BOX 1225
MONTICELLO, UT 84535

DATE 10-14-05

PAY TO THE ORDER OF  Free Style Holdings Co.    $65,000.00

Sixty five thousand and no/100    DOLLARS

FOR  Investment

Processed 10/20/05    $65000.00

<u>EXHIBIT "B"</u>

Promissory Note Dated October 17, 2005

FREESTYLE HOLDINGS, LLC
85 EASTBAY BLVD
PROVO,UT 84606

# PROMISSORY NOTE

PRINCIPAL AMOUNT: $**65,000**                    DATE: **October 17, 2005**

FOR VALUE RECEIVED, the undersigned, Freestyle Holdings, LLC located at 85 Eastbay Blvd. Provo, UT 84606, promises to pay to the order of,

**Home Advantage, LC**
**PO Box 1223**
**Monticello, UT 84535**

- The principal sum of owing of **$65000**
- Together with interest thereon from date hereof, at the rate of <u>3.00% **per month**</u>
- As follows: <u>interest only</u> payments of **$1,950.00** on a monthly basis due and payable on the 5th day of each calendar month, beginning **December 7, 2005**.

If payment is received after the 15th of the month, payment shall be considered late and a late charge of $100.00 shall be assessed.

The entire principal shall not be required to be repaid until the principle amount is called due with 30 days advance written notice by lender or until eight months from the date hereof (if the Lender does not specify in writing prior to eight months Lender's desire to renew the note for an additional period of eight months), whichever occurs sooner. No prepayment penalty shall exist nor shall there be any provision prohibiting payment in full at any time by borrower.

In the event of any default by the undersigned in the payment of any amounts when due or in the event of the suspension of actual business, insolvency, assignment for the benefit of creditors, adjudication of bankruptcy, or appointment of a receiver, of or against the undersigned, the unpaid balance of the principal sum of this promissory note shall at the option and 30 day written notice of the holder become immediately due and payable.

Security/Collateral for this note shall be the relative portion of the total equity of real property estate holdings of borrower to be held by borrower which holdings during the normal course of operations shall in the best judgment of borrower, and as verified by independent appraisal at least semiannually, shall have substantially similar or greater market value to the principal sum owing related to this note. Lender shall be provided with details including valuations of such real property holdings of borrower with 30 days advance written request by lender but such requests shall be limited to once request per month.

This note is made and executed under, and is governed by, the laws of the State of Utah.

Managing Member
Freestyle Holdings, LLC

EXHIBIT "C"

Change of Principal &/or Investment Amount Related to a Promissory Note

FREESTYLE HOLDINGS, LLC
85 EASTBAY BLVD
PROVO, UT 84606

## CHANGE OF PRINCIPAL &/OR INTEREST
## AMOUNT RELATED TO A PROMISSORY NOTE

NOTE HOLDER / LENDER:          **Home Advantage, LC**
ORIGINAL NOTE DATE:            **October 17, 2005**
ORIGINAL PRINCIPAL AMT:        **$65,000.00**
ORIGINAL INTEREST RATE:        **3% PER MONTH**
ORIGINAL MONTHLY PAYMENT:      **$1,950.00**

For value received, the undersigned, Freestyle Holdings, LLC located at 85 EastBay Blvd. Provo, UT 84606, hereby amends the promissory note as follows:

| Effective Date | Additional Principal | Interest Rate | Payment Increase | New Mo. Interest Payment |
|---|---|---|---|---|
| 1. March 9, 2006 | $15,000.00 | 3% per month | $450.00 | $2,400.00 |
| 2. June 7, 2006 | $30,000.00 | 3% per month | $900.00 | $3,300.00 |
| 3. October 30, 2006 | $247,500.00 | 3% per month | $7,425.00 | $10,725.00 |
| 4. January 5, 2007 | $40,500.00 | 3% per month | $1,215.00 | $11,940.00 |
| 5. January 23, 2007 | $80,000.00 | 3% per month | $2,400.00 | $14,340.00 |
| 6. June 13, 2007 | $77,000.00 | 3% per month | $2,310.00 | $16,650.00 |
| 7. August 7, 2007 | $16,650.00 | 3% per month | $499.50 | $17,149.50 |

## SUMMARY

The New Principal Balance of the Note is: **$571,650.00**

The New Monthly Interest Payment is: **$17,149.50**

This New Monthly Interest Payment will begin on November 7, 2007.

Managing Member
Freestyle Holdings, LLC

FREESTYLE HOLDINGS, LLC
85 EASTBAY BLVD
PROVO, UT 84606

## CHANGE OF PRINCIPAL &/OR INTEREST AMOUNT
### RELATED TO A PROMISSORY NOTE
#### Page 2

NOTE HOLDER / LENDER:          **Home Advantage, LC**
ORIGINAL NOTE DATE:            **October 17, 2005**
ORIGINAL PRINCIPAL AMT:        **$65,000.00**
CARRY OVER BALANCE FROM P. 1   $571,650.00
CARRY OVER INTEREST RATE:      **3% PER MONTH**
CARRY OVER MONTHLY PAYMENT:    **$17,149.50**

For value received, the undersigned, Freestyle Holdings, LLC located at 85 EastBay Blvd. Provo, UT 84606, hereby amends the promissory note as follows:

| Effective Date | Additional Principal | Interest Rate | Payment Increase | New Mo. Interest Payment |
|---|---|---|---|---|
| September 7, 2007 | $17,149.50 | 3% per month | $514.49 | $17,663.99 |
| October 7, 2007 | $17,663.99 | 3% per month | $529.92 | $18,193.91 |
| | | % per month | | |
| | | % per month | | |
| | | % per month | | |
| | | % per month | | |
| | | % per month | | |
| | | % per month | | |
| | | % per month | | |
| | | % per month | | |
| | | % per month | | |

## SUMMARY

The New Principal Balance of the Note is: **$606,463.49**

The New Monthly Interest Payment is: **$18,193.91**

This New Monthly Interest Payment will begin on **November 7, 2007**

_____
Managing Member
Freestyle Holdings, LLC

Special Note:  _____

EXHIBIT "D"

Letter Demand/Notice of Repayment

August 20, 2007


Home Advantage, LC.
P.O. Box 1223
Monticello, Utah  84535
435-587-3093


Freestyle Holdings, LLC
Jason Vaughn, Managing Member
85 Eastbay Blvd.
Provo, Utah  84606

Jason:

After reviewing our needs and as a result of recent conversations with you regarding our investment capital, Home Advantage, LC. hereby calls due the total principal sum of your promissory to Home Advantage, LC. executed October 17, 2005.  A copy of the original note is attached along with the most recent "Change of Principle" statement for your reference.

According to the note, we will expect payment in full within 30 days of this letter in the amount of $555,000.00 plus $33,300.00 due for the August and September payments (due by September 5).  Even though this note is in default, we will not require the $200.00 late fees to which we are entitled.  This brings the total amount due and payable to $588,300.00

Thank-you for your attention to this matter.

Sincerely,

Tom Tibbs
Member, Home Advantage, LC.

Cc:  Clavell Anderson
       Rick Koerber